UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLSON L. FARRELL, : | CIVIL ACTION |
| Plaintiff : | |
| : | No.: 05-2168 |
| v. : | |
| : | JURY TRIAL DEMANDED |
| WAL-MART, : | |
| : | FILED ELECTRONICALLY |
| Defendant. : | |

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

Plaintiff Nicholson L. Farrell ("Farrell"), by his attorneys, Broughal & DeVito, L.L.P., submits this Brief in Opposition to Defendant's Motion in Limine.

Introduction

Defendant seeks to have this Honorable Court exclude from evidence a memorandum from a high-ranking corporate executive to Defendant's board of directors that contains statements that are discriminatory to people with disabilities. This Honorable Court should deny Defendant's Motion in Limine because the Benefits Strategy Memorandum provides circumstantial evidence of a culture that is discriminatory to people with disabilities.

Statement of Facts

Plaintiff Farrell, who was a long-term employee of Defendant, is a complete paraplegic and confined to a wheelchair.[1] In late March 2003, Plaintiff Farrell began to report to Mr.

---

[1] Complaint at ¶¶ 10-12; Answer at ¶¶ 1, 2, 6.

Brelsford, a new store manager in Defendant's Whitehall, Pennsylvania store.[2] Brelsford harassed Plaintiff Farrell, forced him to work brutal numbers of days and hours in a row, and terminated him as a result of his disability.[3] Brelsford forced Plaintiff Farrell to work 13 hours per day on 30 of the last 33 days of his employment.[4] No legitimate business reason required Farrell to work 30 of his last 33 days of employment.[5]

Defendant's corporate culture of discrimination against disabled employees is articulated and formalized in a document entitled Reviewing and Revising Wal-Mart's Benefits Strategy ("Benefits Strategy Memo"). The Benefits Strategy Memo issued as a "Memorandum to the Board of Directors from Susan Chambers,"[6] then Defendant's Executive Vice President of Benefits, a member of Defendant's Executive Committee, a shareholder, and a Senior Officer.[7]

The Benefits Strategy Memo states:

- "from 2002 to 2005, our benefit costs grew significantly faster than sales;"[8]
- "increased utilization of medical services, which grew by 10% per year was the primary driver of the rapid growth in our healthcare costs;"[9]

---

[2] Brelsford Dep. at p. 6, lines 17-23 (Copies of the pages of Brelsford's Deposition transcript, which are cited in this Brief, are attached to Plaintiff's Exhibit Binder in Opposition to Defendant's Motion in Limine ("Plaintiff's Exhibit Binder") as Exhibit "1.")

[3] Farrell Deposition at p. 16, lines 12-24; p. 20, lines 19-23; p. 21, line 21 – p. 22, line 14; p. 28, line 19 – p. 29, line 13; p. 35, line 12 – p. 36, line 2; p. 58, line 18 – p. 59, line 11; p. 122, line 5 – p. 124, line 24; p. 129, line 19; p. 133, lines 1-15; p. 138, line 15 – p. 139, line 17. (Copies of the pages of Farrell's deposition transcript that are cited in this Brief are attached to Plaintiff's Exhibit Binder as Exhibit "2.")

[4] Farrell Deposition at p. 62, lines 14-23; p. 122, line 5 – p. 125, line 6, Exhibit "2."

[5] Gladfelter Deposition at p. 155, lines 4-7, 16-20. (Copies of the pages of Gladfelter's Deposition that are cited in this Brief are attached to Plaintiff's Exhibit Binder as Exhibit "3.")

[6] See Benefits Strategy Memo at p. 1. (A copy of the Benefits Strategy memo is attached to Plaintiff's Exhibit Binder as Exhibit "4.")

[7] Chambers Deposition at pp. 11-13. (Copies of the pages from Ms. Chambers' Deposition that are cited in this Brief are marked as Exhibit "5" and filed under seal); see also page from Defendant's webpage (a copy of which is attached to Plaintiff's Exhibit Binder as Exhibit "6.")

[8] Benefits Strategy Memo at p. 4, Exhibit "4."

[9] Benefits Strategy Memo at p. 4, Exhibit "4."

2

- "[m]ost troubling the least healthy, least productive workers are more satisfied with their benefits than other segments and are interested in longer careers with Wal-Mart;"[10]

- the "[g]rowth in benefit costs is unacceptable;"[11]

- "Wal-Mart should seek to attract a healthier workforce."[12]

- "[d]esign all jobs to include some physical activity (e.g. all cashiers do some cart gathering);"[13]

- "a healthier workforce will lead to lower insurance costs;"[14]

- "these moves would also dissuade unhealthy people from coming to work at Wal-Mart."[15]

These statements are discriminatory to employees with disabilities and reveal a biased corporate culture.

The ideas in the Benefits Strategy Memo were not new to Defendant's management:

- Defendant expected its store managers to control costs;[16]

- Defendant's home office sent messages, predating the Benefits Strategy Memo, to its stores to encourage workers to be "healthy;"[17]

- Ms. Chambers testified that: "Relative to one in particular, group insurance, I know that we do everything we can as a company working with our associates to manage total insurance costs, that would be true, that's one I can speak to;"[18]

---

[10] Benefits Strategy Memo at p. 1, Exhibit "4."
[11] Benefits Strategy Memo at p. 1, Exhibit "4."
[12] Benefits Strategy Memo at p. 14, Exhibit "4."
[13] Benefits Strategy Memo at p. 14, Exhibit "4."
[14] Benefits Strategy Memo at p. 14, Exhibit "4."
[15] Benefits Strategy Memo at p. 14, Exhibit "4."
[16] Chambers Deposition at p. 21, lines 10-18, Exhibit "5" (under seal); Brelsford Deposition at p. 76, lines 1-11, Exhibit "1;" Group insurance, which includes health insurance, is included on Profit & Loss statements as a controllable expense in 2003-2004. Gladfelter Deposition at p. 36, lines 3-15, Exhibit "3."
[17] Chambers Deposition at p. 34, line 1 – p. 35, line 14, Exhibit "5" (under seal).
[18] Chambers Deposition at p. 29, lines 6-13, Exhibit "5" (under seal).

- Management employees regularly spoke about the growth in benefit costs from 2002-2005.[19]

Brelsford's treatment of Plaintiff Farrell exemplified the corporate culture outlined in the Benefits Strategy Memo. Just as the Benefits Strategy Memo anticipated that requiring cashiers to move shopping carts would dissuade unhealthy workers from coming to work at Defendant, Brelsford assumed moving shopping carts would exceed a paraplegic manager's, i.e. Plaintiff Farrell's, capacity.[20]

Defendant's Motion In Limine Should Be Denied
Because The Benefits Strategy Memo Is
<u>Evidence of Defendant's Corporate Culture</u>

The Third Circuit Court of Appeals repeatedly holds that "discriminatory statements by nondecisionmakers, or statements made temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination." <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1214 (3d Cir. 1995); <u>see also, Walden v. Georgia-Pacific Corp.</u>, 126 F.3d 506, 521 (3d Cir. 1997) ("[S]tray remarks by nondecisionmakers may be properly used by litigants as circumstantial evidence of discrimination."); <u>Brewer v. Quaker State Oil Refining Corp.</u>, 72 F.3d 326, 333 (3d Cir. 1995) ("[A] supervisor's statement about the employer's employment practices or managerial policy is relevant to show the corporate culture in which a company makes its employment decision, and may be used to build a circumstantial case of discrimination.")

In <u>Brewer</u>, a CEO made the statement in a company newsletter that two newly hired executives were "two of our star young men in their mid-40's. That age group is our future."

---

[19] Chambers Deposition at p. 47, lines 10-21; p. 48, lines 12-15; p. 65, lines 3 – p. 66, line 13, Exhibit "5" (under seal).
[20] Farrell Deposition at p. 35, lines 12 – p. 36, line 2, Exhibit "2."

Brewer, 72 F.3d at 333. The statement was made almost two years before the plaintiff was terminated. Brewer, 72 F.3d at 333. The court held that the jury may consider the statement as evidence of the corporate culture in which the decision to terminate the plaintiff was made. Id. at 334. The court reasoned that:

> "When a major company executive speaks, 'everybody listens' in the corporate hierarchy, and when the executive's comments prove to be disadvantageous to a company's subsequent litigation posture, it cannot compartmentalize this executive as if he had nothing more to do with company policy than the janitor or night watchman." Lockhart, 879 F.2d at 54.

Brewer, 72 F.3d at 334.

In the case at bar, Ms. Chambers, a major company executive, made statements in the Benefits Strategy Memo that are disadvantageous to Defendant's current litigation posture. Defendant should not be permitted to compartmentalize Ms. Chambers as if she had nothing to do with Defendant's policy toward "unhealthy" or disabled employees. Id.

A discriminatory corporate culture existed before the Benefits Strategy Memo was issued, when Plaintiff Farrell was terminated. For example,

- store managers are expected to control costs. (Chambers Dep. at p. 21, lines 10-18, Exhibit "5" (under seal); Brelsford Dep. at p. 76, lines 1-11, Exhibit "1");

- Defendant does "everything [it] can . . . to manage total insurance costs." (Chambers Dep. at p. 29, lines 6-13, Exhibit "5" (under seal));

- health insurance is included on monthly profit and loss statements as a controllable expense. (Gladfelter Dep. at p. 36, lines 3-15, Exhibit "3");

- Defendant's corporate office sent messages to its stores that it wanted "healthy" workers. (Chambers Dep. at p. 34, line 1 – p. 35, line 14, Exhibit "5" (under seal));

Similarly to Lockhart, "it would be reasonable for the jury to conclude that [the statements in the Benefits Strategy Memo were] not a recent managerial viewpoint, but that it was merely a cumulative statement of managerial policies that had been sanctioned by or favored by top executives at Defendant for a considerable time." Lockhart v. Westinghouse Credit Corporation, 879 F.2d 43, 54 (3d Cir. 1989) (holding that age-related statement made after termination by high ranking executive, who was not involved in termination was relevant evidence of company policy and admissible) (reversed on other grounds).

The Benefits Strategy Memo provides relevant circumstantial evidence of Defendant's discriminatory corporate culture, even though it post-dated the termination. Ryder v. Westinghouse Electric Corp., 128 F.3d 128, 130-34 (3d Cir. 1997). In Ryder, Appellant challenged the admission of alleged ageist statements contained in a "Chairman's Initiative Memorandum" by Appellant's CEO approximately one year after Appellee was terminated. Id. at 133. The court held that the memorandum was not irrelevant even though it contained comments made approximately one year after Appellee was terminated and comments that did not relate to the decision to terminate Appellee. Id. The court held that statements were relevant evidence in an age discrimination case of corporate culture which would circumstantially prove discriminatory animus. Id. at 132-33; see also Farahmand v. Cohen, 1999 WL 50456 at *4 (E.D. Pa. 1999) ("The law in this circuit states that after the fact evidence may be admissible as circumstantial evidence to show discrimination.") This Honorable Court should hold that the

Benefits Strategy Memo is admissible and deny Defendant's Motion in Limine. Lockhart, 879 F.2d at 54; Ryder, 128 F.3d at 130-34.

> Defendant's Motion In Limine
> Should Be Denied Because Defendant
> <u>Has Not Shown Unfair Prejudice</u>

The relevance of the Benefits Strategy Memo is enhanced because it reflects the statements of a high-ranking executive. Ryder, 128 F.3d at 133. The Benefits Strategy Memo reflects a cumulative managerial attitude that was held by Defendant for a considerable time. As such, the relevancy outweighs any undescribed "unfair prejudice." Id. (holding that the relevancy of a memo issued by CEO, which contained alleged discriminatory statements, outweighed alleged prejudice).

"There is a strong presumption that relevant evidence should be admitted, and exclusion under Rule 403 mandates that the probative value of evidence must be "substantially outweighed" by the problems of admitting it." Missimer v. Tiger Machine Company, Ltd., 2005 WL 2396934 at *2 (E.D. Pa. 2005) (citing Coleman v. Home Depot, Inc., 306 F.3d 1333, 1343-44 (3d Cir. 2002)). The Advisory Committee Notes to Rule 403 of the Federal Rules of Evidence define "unfair prejudice" as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Defendant makes no showing or argument of how the Benefits Strategy Memo creates an undue tendency to suggest decision on an improper basis.

Conclusion

For the reasons stated above, the Benefits Strategy Memo reflects relevant evidence of a corporate culture which is discriminatory to people with disabilities and Defendant's Motion in Limine should be denied.

Respectfully submitted,

BROUGHAL & DeVITO, L.L.P.

Date: October 12, 2006     By:     /s/John S. Harrison, Esquire
**John S. Harrison, Esquire**
Attorney I.D. #53864
38 West Market Street
Bethlehem, PA  18018
Telephone No.: (610) 863-3664
Facsimile No.: (610) 865-0969
*Attorneys for Plaintiff*